No. 19,924.

THE KANSAS STATE MUTUAL HAIL ASSOCIATION, *Appellant*, v. THE TITLE GUARANTY & SURETY COMPANY, *Appellee*, and THE AMERICAN SURETY COMPANY.

OPINION DENYING A REHEARING.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion denying a rehearing filed April 8, 1916. (For original opinion of affirmance see *ante*, p. 271, 155 Pac. 13.)

*Alex S. Hendry*, of McPherson, for the appellant.

*G. F. Grattan*, and *J. M. Grattan*, both of McPherson, for the appellee.

The opinion of the court was delivered by

Mason, J.: In affirming this case the court decided that the evidence justified submitting to the jury the question whether the insurance association, in the application to the bonding company for a bond for its employee, should have mentioned as a debt the fifty dollars which it had advanced to him, and whether the failure to mention it proceeded from bad faith. In a petition for a rehearing the plaintiff criticises the instruction submitting that question on the ground that it was outside the issues made by the pleadings. The answer did not directly and distinctly refer to this matter, but it did allege that the statements in the application were willfully false, and this particular question was developed at the trial. In a supplemental petition for a rehearing it is said that the evidence on the subject was objected to by the appellant as not constituting a debt, and as not within the issues in the case. We do not find in the abstracts any mention of the latter objection. No injustice is apparent in the submission of this issue to the jury. The plaintiff asserts that the instructions made it a special feature by repeating it so many times. We find it mentioned but once, and then only incidentally, save in the particular instruction to which objection is made. As stated in the original opinion, it is very unlikely that the verdict was influenced by this phase of the matter. The jury found specifically that Calder had not authorized any part of his remittances to be applied on the expense account, and this implies that there was no agreement pledging all his receipts to the payment of the advances made him. This finding indicates the basis of the decision, and renders immaterial any error respecting the issue of fraud.

The failure of the court to instruct on other issues is also now complained of, but the specifications of error were silent on the subject.

The petition for a rehearing quotes these words from the original opinion: "He [the employee, Calder] was authorized to retain twenty per cent from each premium collected." It then adds: "There was not a syllable of evidence offered, nor was it alleged that agent Calder was authorized to retain his commissions at all. In fact he was not. . . . The assump-

tion in the opinion that the agent was authorized to retain twenty per cent from each premium collected, is without foundation." In view of the court's expressed judgment on the matter this language is somewhat dogmatic, but it will be assumed that counsel intends no discourtesy. The plaintiff's principal witness, the secretary of the insurance association, who transacted all the business with the agent, replied in the negative to the question: "If you had never advanced any money to Mr. Calder, would he owe this company anything?" He testified: "Each report [sent in by Calder] shows the total premiums received, *the agent's commission retained* and the amount due the company." He was asked: "Was there any premiums, cash premiums through Calder, that your company did n't get?" He answered: "No, sir." The examination then proceeded thus:

"Q. How many dollars of premiums did this man write? A. A little over $2000, was n't it? $2099.

"Q. He deposited that to your company's credit in the Stockton National Bank, did n't he? A. A part of it.

"Q. What part, your part? A. Yes, sir.

"Q. All of your part went there, did n't it? A. Yes, sir."

Calder testified that he was to receive twenty per cent on all the business written by himself and his subagents, and that the company was to receive the remainder—"to receive their net [proceeds] of their insurance."

The plaintiff's present conception seems to be that the agent was to be paid a salary equal to twenty per cent of the premiums he collected—that he had no authority to retain any part of the collections, but was bound to turn them all in, the company as a separate transaction to pay him a salary measured by the amount of business done. At the trial the right of the agent to withhold his commission from what he had collected appears not to have been challenged, except by reason of the advances that had been made him. It is clear that the company advanced him money to enable him to pay his expenses in getting started, expecting to receive it back out of his share of the premiums collected. The real controversy was whether, as he testified, he was to repay it as he found himself able to spare sums from time to time out of his share of the proceeds — as his commissions yielded something over his

necessary expenses; or whether, as claimed by the company, all his share of the proceeds—all his twenty per cent commissions—stood pledged to the repayment of the money advanced him, so that he was not entitled to retain any of it while any part of his debt remained unpaid. The jury decided this question of fact against the plaintiff. Their decision is not reviewable here, and really determines everything of substance that is involved in the lawsuit.

The petition for a rehearing is denied.